## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOHN J. CHO                                              CIVIL ACTION

VERSUS                                                   NO. 05-2725

N. BURL CAIN, WARDEN                                     SECTION "C"

### ORDER AND REASONS

Before the Court is a petition for habeas corpus by John J. Cho ("Petitioner"), filed

pursuant to 28 U.S.C. § 2254. Petitioner is seeking relief from his December 4, 2000 conviction

for attempted possession with the intent to distribute marijuana  under LA. REV. STAT. §§ 40:979

and 40:966A,  for which, after a multiple bill hearing, he was sentenced to life in prison, without

the benefit of parole, according to the Louisiana Habitual Offender Law, LA. REV. STAT. §

15:529.1. Petitioner is currently incarcerated at the Louisiana State Penitentiary in Angola,

Louisiana. As grounds for relief, Petitioner claims: (1) the state court erred in denying his motion

to suppress, thereby violating his Fourth Amendment rights; (2) he received ineffective

assistance of counsel because his attorney failed to timely object to hearsay testimony; (3) the

state courts erred in ruling that his counsel failed to preserve his hearsay objection; additionally,

the prosecution erred by failing to secure Mario Gonzalez as a trial witness; (4) the trial court

erred because Petitioner was not allowed to fully cross examine the state's witnesses; (5) the trial

court failed to correct impermissible testimony about other crimes, and the trial court

1

erroneously denied a motion for a mistrial following references to the Petitioner's prior bad acts;

(6) there was insufficient evidence to support the verdict; (7) his due process rights were violated

because the state used inconsistent and irreconcilable theories to secure a conviction; (8) an

alleged due process violation regarding improper statements by the Prosecutor was subsequently

waived on December 19, 2005 (Rec. Docs. 10 & 11).[1] For the reasons set forth below, this

petition is **DENIED WITH PREJUDICE**.

I. CASE HISTORY

Petitioner was arrested on November 18, 1999, and charged with possession with the

intent to distribute marijuana in violation of LA. REV. STAT. § 40:966A.  Fed. Rec., Petition for

Habeas Corpus, p. 2. Petitioner moved to suppress evidence and hearings on the motion were

held on May 23, 2000 and June 16, 2000. *Id.* The trial court denied Petitioner's motion to

suppress on July 11, 2000. *Id.* Following a trial on October 25 and 26, 2000, Petitioner was

convicted of the lesser offense of attempted possession with the intent to distribute and

sentenced to ten (10) years at hard labor. State Rec. Vol. 1, Jury Verdict, p. 92; State Rec. Vol. 1,

Minute Entry, p. 96. Following a Multiple Bill hearing on February 6, 2001, the Petitioner was

adjudged a third felony offender; the court set aside the original ten (10) year term, and

sentenced Petitioner to life in prison without the benefit of parole. State Rec. Vol. 1, Minute

Entry, p. 106. The Louisiana Court of Appeal for the Fifth Circuit summarized the facts of the

case during Petitioner's direct appeal as follows:

> On November 18, 1999, Lieutenant Gerard Simone of the Jefferson Parish
> Sheriff's Office (JPSO), assigned to the Narcotics Interdiction Unit at Armstrong
> International Airport, testified that he watched a man purchase a passenger ticket

---

[1] The order in which the claims are listed and analyzed in this opinion differs from the order in
which they were presented in Petitioner's submission for organizational purposes.

at the Southwest Airlines ticket counter and then leave the building. Lt. Simone's suspicions were aroused because the transaction took an unusually long time, the man was unable to produce picture identification and he paid cash for the ticket.

After the man left the building, Lt. Simone questioned the ticket agent about the transaction. He learned that the subject had bought a round-trip ticket for Rene Hernandez (Hernandez), for a flight originating in Arlington, Texas and arriving in New Orleans on that day. The return flight was scheduled for later that afternoon. Lt. Simone testified that it is common for drug traffickers to purchase airline tickets in cash and that the route between Texas and New Orleans is a major corridor for marijuana distribution.

Lt. Simone, accompanied by a United States Customs agent, waited in the concourse for the flight to arrive. Lt. Simone identified Hernandez when he exited the airplane. He carried no luggage. They followed him to the airport lobby and observed that he appeared to be waiting for someone. Lt. Simone approached Hernandez and identified himself as a police officer. Hernandez voluntarily answered Lt. Simone's questions and produced his airline ticket and identification when requested. He informed the officers that he was in the city to visit his friend Mario Gonzalez (Gonzalez).[2]

Subsequently, two men arrived in a green Isuzu Rodeo car to pick up Hernandez. The Defendant was the driver and the passenger was Gonzalez. Lt. Simone recognized Gonzalez as the man who earlier had purchased the airline ticket. Lt. Simone asked Gonzalez to exit the vehicle and he complied. When Lt. Simone asked Gonzalez for identification, he could not produce any. He asked Gonzalez whether he knew Hernandez. Gonzalez responded that Hernandez was his friend and that he was in town to visit him for several weeks. Gonzalez said that he did not know who had purchased Hernandez' airline ticket and denied having bought it himself.

Lieutenant Simone asked the Defendant for identification and he produced a Louisiana driver's license. The Defendant stated that he did not know Gonzalez or Hernandez and that he had driven Gonzalez to the airport as a favor to a friend. The Defendant said that Gonzalez was staying at the Travelodge Hotel on Veterans Highway. Lt. Simone asked the Defendant for permission to search his vehicle and he consented. A cursory search of the vehicle revealed nothing and Lt. Simone allowed the Defendant to leave the airport. Lt. Simone then asked Gonzalez and Hernandez to accompany him to his office in the airport and they agreed to do so.

A criminal background check of Gonzalez revealed that he had been arrested in Dallas a month earlier. Gonzalez told Lt. Simone that he was willing to cooperate

---

[2] The name is spelled both "Gonzalez" and "Gonzales" in the record.

with police. He admitted that he had arrived in the New Orleans area two days earlier and had delivered 15 pounds of marijuana to the Defendant at the Defendant's residence. Gonzalez said he was staying at the Defendant's house. The address that Lt. Simone had recorded from the Defendant's driver's license was 21 Incarnate Word Drive in Kenner. Gonzalez said that he had transported the marijuana to the house in his own gray Nissan car.

Lt. Simone alerted other agents at the JPSO and the Kenner Police Department (KPD) about the information that Gonzalez had given him. Based on that information, officers from both agencies went to the Defendant's house. Lt. Simone transported Gonzalez to the Defendant's residence, while other agents took Hernandez there.

At the Defendant's residence, Lt. Simone met with Detective George Ansardi, a narcotics investigator with the KPD and informed him of the facts he had gathered up to that point. Detective Ansardi used the information to prepare and obtain a search warrant for the Defendant's residence.

Detective Ansardi testified that none of the other officers went inside the Defendant's house until he arrived with the signed search warrant. Sergeant Ronald LaBarriere of the KPD's K-9 unit testified that he waited at the house until the search warrant arrived and did not see anyone go inside. The Defendant was not at home at the time that the officers arrived. When the Defendant returned to his residence and saw officers waiting outside, he attempted to flee. He was stopped by police and was held outside of his house while the officers entered by using a key that the Defendant had given to them.

Sergeant LaBarriere performed a sweep of the three-bedroom residence with a narcotics dog, who alerted him to several drug locations in the house. The dog also alerted the officers to drugs in a Nissan car in the garage. Detective Ansardi and other officers then proceeded to check the areas indicated by the dog.

The search of the house produced a Rave store shopping bag containing a clear plastic bag of marijuana, marijuana and cigarette rolling papers in plain view on the living room floor, marijuana cigarettes in ashtrays in various locations around the house, and a bottle of Ultimate Blend, a carbohydrate drink which purports to rid the body of "impurities" and is used before a drug screening. The officers found nine pounds of marijuana packaged in one pound amounts in clear plastic bags under some blankets in the closet of the northwest bedroom and several ounces of marijuana in a clear plastic bag in the southeast bedroom, hidden between the bed's mattress and box spring. They also found what appeared to be a marijuana processing station in the northwest bedroom. There was no bed in the room and no clothes in the closet. The room contained a digital weighing scale located on the top of a desk and "shake" marijuana residue was found on the desk

4

and on the cement floor. Various bills and correspondence bearing the Defendant's name were found in the room.

The officers searched the Nissan car and seized $2,345 in cash, Western Union wire transfer receipts, a $1,000 money order listing the Defendant as the sender and Hernandez as the recipient, and a $500 money order listing Gonzalez as the sender and Hernandez as the recipient. No marijuana was found. The officers also found a paper with tabulated figures in the car. Among the figures were 15 entries for $500 each, for a total of $7,500. Detective Ansardi testified that $500 is the going rate for a pound of marijuana. The figures also included $180 for 15, which the Detective stated was for service charges and finder's fees. A Southwest Airlines passenger ticket, dated November 18, 1999, was also found in the car. Hernandez was listed as the passenger and Gonzalez as the purchaser. The flight originated in Arlington, Texas. Lt. Simone testified that it was his understanding that both Gonzalez and Hernandez resided in Texas.

Officer Edward Rhode, a crime scene technician with the KPD, photographed the house. He testified that the photographs, State's Exhibits 16 through 46, accurately depict the house as it looked at the time of the search.

Daniel Waguespack (Waguespack), a forensic scientist with the Jefferson Parish Crime Lab, testified that he performed chemical tests on several evidence samples. He stated that State's Exhibit 2, a small amount of vegetative material rolled in white paper, tested positive for marijuana. He also randomly tested nine plastic bags of vegetative material (State's Exhibits 3 through 11), finding them positive for marijuana. The gross weight of the nine packages was 9.4 pounds. Waguespack also testified that State's Exhibits 13 and 14, bags of loose vegetative material, tested positive for marijuana. The gross weight of State's Exhibit 13 was 454.9 grams, or about one pound. State's Exhibit 15 was identified as several cigarette butts and loose vegetative material, which also tested positive for marijuana.

Sergeant Bruce Harrison of the JPSO was qualified as an expert in the use, packaging, distribution, trafficking, and value of narcotics. He testified that the quantity and value of marijuana seized in this case, along with the scale and written documentation found in the house and car, indicates the intent to distribute marijuana.[3] Sgt. Harrison testified that the factors which he used in determining whether subjects are engaged in simple possession of marijuana or in the distribution of the drug are the quantity of the drug in the subject's possession, whether the drug is packaged for sale or for individual use, and the value of the drug. According to Sgt. Harrison, the average marijuana user would most likely have a smaller quantity and would possess user paraphernalia such as cigarette rolling papers, hollowed-out cigars, and smoking devices. Those involved in

---

[3] The Defendant was the only person arrested in connection with the search of the residence.

distribution of marijuana would possess large quantities of the drug and it would be packaged for sale. Drug dealers also commonly have communication devices such as pagers, cellular telephones, facsimile machines, and documentation of transactions.

Sgt. Harrison testified that one of the one-pound bags of marijuana seized in the search would sell for between $800 and $1,200 on the street. In his opinion, one pound of marijuana would make 448 large marijuana cigars ("blunts"). Ten pounds would make 4,448 cigars. It would take the average marijuana user well over a year to consume that amount of marijuana, assuming he smoked ten marijuana cigarettes a day. He further stated that $500 is the going price for a pound of marijuana from Texas. In addition, there are fees for delivery of the drug. He identified paperwork found in the Nissan car during the search as a drug tally sheet and testified that the figures on the sheet were consistent with the sale of 15 pounds of marijuana at $500. The paper contains 15 entries of $500 each.

Sgt. Harrison testified that it is common for drug traffickers to transfer large amounts of money in several small increments, so as to allay suspicion by police. These transfers are usually made by wire, to eliminate the risk to the parties of carrying large amounts of money. They commonly use false names in making such transfers, but there is usually something in the name or address that gives a clue as to the parties involved. Consistent with this practice is the documentation of a $1,000 money order found in the Nissan car during the search. It was made payable to Hernandez in Edinburgh, Texas and the sender's name was listed as Ju Cho, 21 Incarnate Word Drive. The officers also uncovered documentation of a $500 money order sent to Hernandez by Gonzalez. The paperwork found in the Nissan car also documents wire transfers in amounts consistent with the sale of marijuana in $500 increments.

A defense witness, Aaron Joseph (Joseph), testified that he, not the Defendant, bought marijuana from Gonzalez. Joseph stated that he rented the house from the Defendant, whose mother was the owner and that the Defendant was not living there at the time of his arrest. Joseph said that he had purchased ten pounds of marijuana from Gonzalez that he planned to sell, but that this was the first time he had ever set out to deal marijuana. He claimed that the Defendant did not know that there were drugs in the house. He never told the Defendant about the marijuana and he hid the drugs in a closet to conceal it from him. Joseph testified that Gonzalez owned the Nissan car parked in the garage. Joseph was in Biloxi with his girlfriend at the time police searched the house. He claimed that he had a party at the house the night before the police search. *State v. Cho*, 831 So.2d 433, 438-42 (La.App 5 Cir. 2002).

The Louisiana Fifth Circuit Court of Appeal affirmed Petitioner's convictions and

sentences on October 29, 2002. *State v. Cho*, 831 So.2d 433 (La.App 5 Cir. 2002).

6

And, the Louisiana Supreme Court denied Petitioner's Application for Writ of Certiorari and/or Review on April 4, 2003. *State v. Cho*, 840 So.2d 1213 (La. 2003).

Subsequent to his direct appeal, Petitioner filed an application for post-conviction relief. Post-conviction relief was denied by the trial court on April 6, 2004. State Rec., Vol. 2, Order of the 24th Judicial District Court of the Parish of Jefferson, Division D. On January 6, 2005, the Louisiana appellate court denied Petitioner's application for Post-Conviction Relief without comment. State Rec. Vol. 3, Order of the Fifth Circuit Court of Appeal. And, the Louisiana Supreme Court denied Petitioner's Application for Supervisory and/or Remedial Writs regarding his application for post-conviction relief on April 29, 2005. *State ex rel. Cho v. State*, 901 So.2d 1049 (La. 2005). Petitioner filed the instant *habeas* petition on July 5, 2005.

## II. PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a). Physical incarceration satisfies the custody requirement. *See e.g., Maleng v. Cook*, 490 U.S. 488, 491 (1989). Here, Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Fed. Rec. Petition for Habeas Corpus, p. A. Thus, Petitioner is in custody for the conviction he is attacking. Accordingly, one basis of this Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained.

7

Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana according to 28 U.S.C. § 98(b).  However, Petitioner was convicted and sentenced in Jefferson Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana. Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### C. Timeliness

The State concedes that Petitioner timely filed his *habeas corpus* petition; upon review, this Court agrees that the Petition is timely. Fed. Rec., Response to Habeas Corpus Petition, p. 5. The Anti-terrorism and Effective Death Penalty Act of 1996[4] ("AEDPA") requires that a *habeas* petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes "final."[5] Yet, AEDPA's one-year statute of limitations is tolled for the period of time during

---

[4] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[5] 28 U.S.C.§ 2254(d) provides:
>    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

which a properly filed application for state post-conviction relief or other collateral
review attacking a conviction or sentence is pending in state court. 28 U.S.C.§
2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). Furthermore, "a properly
filed application is one submitted according to the state's procedural requirements, such
as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184
F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir.
1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).

   The Supreme Court ruled that  "finality attaches when this Court affirms a
conviction on the merits on direct review or denies a petition for a writ of certiorari, or
when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S.
522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).
Additionally, a petitioner has ninety days to file a writ of certiorari in the United States
Supreme Court after a decision is rendered by the state's highest court.  SUP. CT. R.
13(1).  As noted above, the Louisiana Supreme Court denied Petitioner's direct appeal on
April 4, 2003. *State v. Cho*, 840 So.2d 1213 (La. 2003). Petitioner did not appeal to the
United States Supreme Court. Therefore, Petitioner's conviction became "final" on July
3, 2003, ninety days after the Louisiana Supreme Court's decision.

   In this case, AEDPA's one-year statute of limitations was tolled when Petitioner
filed his application for post-conviction relief on March 31, 2004. State Rec. Vol. 2,
Application for Post-Conviction Relief. AEDPA's statute of limitations remained tolled
for the duration of time in which Petitioner's post-conviction relief application was
pending in the state judicial system. Here, Petitioner's post-conviction relief application
was denied by the Louisiana Supreme Court on April 29, 2005. *State ex rel. Cho v. State*,

901 So.2d 1049 (La. 2005). As Petitioner filed the petition *sub judice* on July 1, 2005, the

petition is timely because less than 365 days has elapsed since the state conviction

became final, excepting the time during which Petitioner's properly filed state

application for post-conviction relief was pending.[6]

### D. Exhaustion

Generally, exhaustion of adequate state remedies is a "condition precedent to the

invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411

U.S. 475, 489 (1973). The entirety of the factual allegations and legal theories presented

to the federal court must have been presented in a procedurally proper manner to the

highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459

U.S. 4, 6 (1982) (holding a "habeas petitioner must have fairly presented to the state

courts the substance of his federal habeas corpus claim) (internal quotations omitted)

(citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Yohey v. Collins*, 985 F.2d 222, 226

(5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982). It is important to note that the

issues in a *habeas* petition could have been presented to the highest state court on direct

appeal, or in a state post-conviction proceeding; either is sufficient and both are not

---

[6] Here, a total of 262 days passed from July 3, 2003, when the Louisiana Supreme Court's decision to affirm Petitioner's conviction became "final," until March 31, 2004 when Petitioner filed his state motion for post-conviction relief. AEDPA's statute of limitations was then tolled while Petitioner's claims for post-conviction relief were pending in state court. Thus, AEDPA's one-year limitations period remained tolled from March 31, 2004 until April 29, 2005 when the Louisiana Supreme Court denied Petitioner's Application for Supervisory Writs regarding his claim for post-conviction relief. Adding the additional sixty-three (63) days between the time the Louisiana Supreme Court denied Petitioner's post-conviction application for relief (April 29, 2005) and the time Petitioner filed his habeas petition with this Court (July 1, 2005) to the 262 days that had previously elapsed under AEDPA's limitations period, shows that Petitioner filed his habeas petition 325 days after his conviction became "final." Accordingly, his petition is timely under AEDPA's one-year statute of limitations.

required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).

The exhaustion requirement is now codified by AEDPA, which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that . . . (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.§ 2254(b)(1). Yet, the United States Fifth Circuit Court of Appeals has noted, 28 U.S.C. § 2254(b)(2) "allows a federal court, in its discretion, to **deny** habeas relief on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state, to further the interests of judicial economy. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original).

Here, the Court finds that Petitioner's claims are exhausted as required by AEDPA. The State claims that Petitioner failed to exhaust all of his claims in state court because some of Petitioner's claims were denied by the state courts as procedurally defaulted. However, the State seems to be confusing the issue of exhaustion with the standard of review for procedurally defaulted claims for relief. As listed above, Petitioner presents eight (8) claims for relief in his federal *habeas* petition. Each of these claims was presented to the Louisiana Supreme Court either on direct appeal, or in Petitioner's briefs for post-conviction relief.[7] Accordingly, petitioner has satisfied AEDPA's exhaustion requirement. *See Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).

---

[7] State Rec. Vol. 1, Application for Supervisory Writs; State Rec. Vol. 3, Application for Supervisory Writs From the Order Denying Post-Conviction Relief.

11

III. STANDARD OF REVIEW

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for *habeas* petitions.  The statute mandates that when a state court has adjudicated a claim on the merits, pure questions of law, as well as mixed questions of law and fact, are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). But, questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law, and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

Yet, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

IV. Petitioner's Claims

**1. Fourth Amendment Violation**

Petitioner's first claim is that the state courts erred by denying his motion to suppress evidence because evidence was secured under a deficient search warrant. Fed. Rec., Petition for Habeas Corpus, pp. 9-13. Specifically, Petitioner argues that Det. Ansardi intentionally misrepresented his "plain view" sighting of a car parked in the Petitioner's garage to obtain a magistrate's approval for the search warrant, and thus, the state courts improperly denied Petitioner's motion to suppress. Fed. Rec., Petition for Habeas Corpus, p. 11. Petitioner asserts that the Supreme Court's ruling in *United States v. Leon*, 468 U.S. 897 (1984), which created a good-faith exception to the exclusionary rule, does not apply to this case because the warrant was issued on Det. Ansardi's deliberate misstatements. Fed. Rec., Petition for Habeas Corpus, p. 12.

This court is generally barred from addressing the merits of a claim for *habeas* relief based on the Fourth Amendment due to the mandate enunciated in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the United States Supreme Court held:

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Id.* at 481-482 (footnote omitted).

In interpreting *Stone*, the Fifth Circuit has stated that an "opportunity for full and fair litigation means just that: an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir.2002), *cert. denied*, 537 U.S. 1196 (2003) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978) (internal quotations omitted). Moreover, even if a defendant fails to take advantage of his opportunity to litigate his Fourth Amendment claim, the fact that

the opportunity was there suffices for the *Stone* bar to apply. *Janecka*, 301 F.3d at 320. Furthermore, the Fifth Circuit has held that the *Stone* bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

In this case, petitioner does not contend that he was deprived of a full and fair opportunity to litigate his Fourth Amendment claim in state court. In fact, Petitioner's *habeas* brief notes that the trial court addressed his Fourth Amendment claim during the Motion to Suppress Hearing. Fed. Rec., Petition for Habeas Corpus, p. 11. Additionally, Petitioner recognizes that the state appellate court addressed and dismissed his Fourth Amendment claim. *Id.* Clearly, Petitioner is not alleging that the Louisiana courts deprived him of the opportunity to raise his Fourth Amendment claim; he asserts that the state courts erred by ruling against his motion to suppress. Fifth Circuit precedent clearly holds that when state courts grant the opportunity to raise a Fourth Amendment claim, but err in deciding the issues, a district court may not grant *habeas* relief. *See Swicegood* 577 F.2d at 1324 (holding that the misapplication of federal law does not deny a petitioner a full and fair hearing). Thus, Petitioner's allegations of error by the state courts in deciding his Fourth Amendment claim are insufficient to overcome the *Stone* bar. *Id.* Accordingly, petitioner's claim for *habeas* relief is denied.

### 3. Ineffective Assistance of Counsel

Petitioner next claims that he was rendered ineffective assistance of counsel in violation of his Sixth Amendment rights. Specifically, Petitioner asserts that his counsel's failure to timely object, and thus, preserve Petitioner's right to challenge the introduction of hearsay testimony regarding statements made by Mario Gonzalez was both a deficient

performance of duties, and prejudicial. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate both (1) counsel's performance was deficient *and* (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). In the Fifth Circuit, "[c]ounsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). And, an analysis of an attorney's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 689. "[I]t is necessary to judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a

reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*  Indeed, the Fifth Circuit has adopted the *Strickland test* holding: "[d]eficient performance is prejudicial only upon a showing  that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F. 3d at 860-61. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also, Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697. Furthermore, an ineffective assistance of counsel claim is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003). Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).

In this case, the trial court dismissed Petitioner's claim holding that the attorney's trial strategy did not amount to ineffective assistance of counsel. State Rec., Vol. 2, Order

16

of the 24th Judicial District Court of the Parish of Jefferson, Division D. In light of

AEDPA's deferential standard of review, this Court cannot grant *habeas* relief. Even

assuming that Petitioner's counsel had objected, and that the objection was sustained to

exclude the challenged testimony, Petitioner cannot demonstrate that he was prejudiced

by his counsel's failure to object.

  In this case, there was overwhelming evidence establishing that at least nine (9)

pounds of marijuana were seized from a residence at 21 Incarnate Word Drive in Kenner,

Louisiana. Additional evidence established that Petitioner owned the residence. The

hearsay evidence corroborated the other facts and helped to inculpate Petitioner, but

clearly the challenged hearsay testimony was not the only evidence against Petitioner.

Thus, Petitioner has failed to establish a reasonable probability that absent his counsel's

deficiency, the trial's outcome would have been different. Indeed, the failure to object to

the hearsay testimony is not convincingly outcome determinative when viewed in the

total context of the trial. Accordingly, Petitioner's claim for relief is denied.

### 2. Hearsay & Procedural Default

  Next, Petitioner asserts that the state courts erred in their rulings that Petitioner

did not preserve his objection to hearsay testimony. Additionally, Petitioner claims that

he could not confront all of the witnesses against him because the state failed to secure

Mario Gonzalez as a witness. The state contends that this Court is barred from reviewing

these issues because the state courts rejected the claims based on procedural default.

  The United States Fifth Circuit Court of Appeals has set forth the standards to use

when analyzing whether a claim is procedurally barred:

  A claim that a state has withheld a federal right from a person in its

custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision . . . This rule applies to state court judgments on both substantive and procedural grounds. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Furthermore, "[w]hen the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

For a Petitioner "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (internal quotations omitted). Additionally, to establish a "fundamental miscarriage of justice," the petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).

In this case, the state courts refused to consider petitioner's claim that the trial court allowed impermissible hearsay testimony, holding that the Petitioner failed to make timely objections. *State v. Cho*, 831 So.2d 433, 447 (La.App. 5 Cir. 2002). This Court notes that the failure to comply with a state contemporaneous objection rule constitutes independent and adequate state grounds to preclude federal *habeas* review. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Duncan v. Cain*, 278 F.3d 537, 541-42 (5th Cir. 2002).

18

Furthermore, Petitioner has not shown cause and prejudice to overcome the procedural defaults. Here, Petitioner's ineffective assistance of counsel claim could be an external cause for the failure to timely object to the challenged testimony. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (noting that ineffective assistance of counsel may be a cause for a procedural default). However, as demonstrated above, Petitioner's ineffective assistance claim lacks merit. Thus, Petitioner cannot rely on his ineffective assistance of counsel claim to overcome the procedural bar. Fianlly, Petitioner does not allege other external causes to overcome the procedural bar. Accordingly, Petitioner's claim for relief regarding the admission of impermissible hearsay is barred from review under *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999).

Moreover, Petitioner's argument that his Confrontation Clause rights were violated, and that *Crawford v. Washington* should be applied retroactively must be rejected. The Fifth Circuit has explicitly held that *Crawford* does not apply retroactively. *In re Brown*, 457 F.3d 392, 395 (5th Cir. 2006) (citing *Lave v. Dretke*, 444 F.3d 333, 334-36 (5th Cir.2006)). Finally, Petitioner has not made a persuasive showing that he is actually innocent of the crime,[8] and thus, there is no fundamental miscarriage of justice evidence to out-weigh the procedural bar. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001. Accordingly, Petitioner's claims are barred from review by this Court. *Dorsey v. Quarterman,* 494 F.3d 527, 532 (5th Cir. 2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding that failure to assert cause and prejudice, or miscarriage of justice results in application of the procedural bar)). Consequently, Petitioner's claims for

---

[8] See the denial of Petitioner's claim that there was insufficient evidence to support the verdict, *infra*.

*habeas* relief are denied.

### 4. Cross Examination of Lt. Simone and Sgt. Harrison

Petitioners claims that the trial court improperly limited Petitioner's scope of cross-examination regarding the testimony of Lt. Simone and Sgt. Harrision with respect to Mario Gonzalez. First, Petitioner argues that the trial judge improperly applied the Louisiana Rules of Evidence. However, the alleged failure to comply with state law does not amount to an actionable claim on *habeas* review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). Indeed, this Court may grant a writ of *habeas corpus* only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Second, Petitioner claims that the trial court's limit of Petitioner's cross-examination created "constitutional error of the first magnitude." Fed. Rec., *Habeas* Petition, p. 25. This Court notes that the Confrontation Clause "does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Summers v. Dretke*, 431 F.3d 861, 877 (5th Cir. 2005) (quoting *United States v. Smith*, 930 F.2d 1081, 1088 (5th Cir. 1991). "Moreover, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

In this case, the state trial court limited impeachment of Lt. Simone because the Petitioner's evidence related to arrests, not convictions of Gonzalez. *State v. Cho*, 831 So.2d 433, 449-51 (La.App. 5 Cir. 2002). The appellate court found that the state court properly limited the impeachment of Lt. Simone under state evidentiary laws. While

Petitioner should have been allowed to elicit evidence, if it existed, of any pending charges at the time Gonzalez was detained by Lt. Simone, in order to show a motive to curry favor, the failure to do so fails to override the evidence of guilt, independent of the Gonzalez hearsay testimony. Accordingly, Petitioner's claim for relief is denied on this ground.

With respect to Sgt. Harrison, the state appellate court held that the cross-examination of Sgt. Harrison was erroneously limited by the trial court. *Id.* at 451. Yet, the appellate court found that Petitioner failed to show that questioning Sgt. Harrison about police procedures and police informants would have altered the jury's verdict. *Id.* (holding Petitioner failed "to show how Sgt. Harrison's testimony on the subject of police informants would have changed the outcome of the case ."). This Court agrees that the trial court's limitation of Sgt. Harrison's cross-examination was harmless error.[9] Petitioner's questioning of Sgt. Harrison was not material to the trial's outcome because Sgt. Harrison was only peripherally involved in the case. Sgt. Harrison was not one of the investigating officers, and only testified for the state as an expert about the "packaging, distribution, trafficking, and value of narcotics." *State v. Cho*, 831 So.2d at 451. Thus, the limitations imposed by the trial court were not prejudicial. Accordingly, Petitioner is not entitled to relief on this ground.

### 4. Other Crimes Evidence

Petitioner's next claim for relief is that the Prosecutor elicited, and the trial court

---

[9] In *Brecht v. Abrahamson*, the United States Supreme Court discussed the harmless error standard as it applied to *habeas corpus* relief. 507 U.S. 619, 622 (1993). Under *Brecht*, "*habeas* petitioners may obtain plenary review of their constitutional claims, but are not entitled to *habeas* relief based on trial error unless they can establish that it resulted in actual prejudice." *Id.*

failed to correct impermissible testimony about Petitioner's criminal history. Specifically, Petitioner points to one statement made by Lt. Simone,[10] and one statement by Det. Ansardi[11] to argue that he was entitled to a mistrial. The State asserts that Petitioner's claim lacks merit because Petitioner has not met his burden under 28 U.S.C.§ 2254(d). Essentially, the state argues that Petitioner's claim for relief is based on violation of state law. Yet, Petitioner asserts that the alleged violation of state rules became a constitutional violation. Indeed, Petitioner states that the remarks violated due process safeguards because they undermined the presumption of innocence. Fed. Rec. *Habeas* Petition, p. 28. Additionally, Petitioner claims that "the erroneous introduction of evidence relating to a defendant's prior bad acts risks luring the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* at 29.

　　　　This Court is not convinced that the two remarks made by Lt. Simone and Det. Ansardi, while clearly gratuitous and inappropriate, displaced the presumption of innocence. First, the remarks were elicited by the defense on cross-examination, not the prosecutor. Thus, there is no claim for prosecutorial misconduct. Second, the spontaneous responses to defense counsel's questions cannot be characterized as crucial, critical, or highly significant factors in the jury's determination of guilt. Thus, any influence the remarks made on the presumption of innocence can only amount to harmless error. *See Dorsey v. Quarterman*, 494 F.3d 527, 531 (5th Cir. 2007) (holding that a *habeas* petitioner is not entitled to relief unless evidence of his prior crimes "had a

---

[10] On cross-examination, Lt. Simone was asked if it were unusual to have agents detain a suspect while waiting for a search warrant. His response was, "It wouldn't be unusual, especially if you had problems with the suspect prior."

[11] Again on cross-examination, Det. Ansardi stated, "[the Petitioner] was not unfamiliar to me."

substantial and injurious effect or influence in determining the jury's verdict."). Indeed, the Fifth Circuit notes that the manner in which the jury became aware of the prior bad acts are relevant to the determination of harm. *Id.* Here, the Court is reticent to find that truthful answers to defense counsel's questioning can be the basis for relief; especially when the police officer's comments do not directly link Petitioner to prior drug-trafficking. Accordingly, Petitioner's claim for *habeas corpus* is denied on this ground.

### 6. Insufficient Evidence to Convict

Petitioner next claims that there was insufficient evidence to convict him. Fed. Rec., *Habeas* Petition, pp. 32-33. Specifically, Petitioner argues that jury could not find beyond a reasonable doubt that Petitioner had the *mens rea* for attempted possession of the contraband because the state's evidence failed to reasonably undermine the argument that the drugs belonged to Petitioner's roommate. *Id.* at 33.

First, the Court notes that a claim of insufficient evidence presents a mixed question of law and fact. *Taylor v. Day*, 1999 WL 195515, at *3 (E.D.La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir.2000). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. The well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir.2000).

Petitioner was convicted of attempted possession with the intent to distribute

23

marijuana under LA. REV. STAT. §§ 40:979 and 40:966A. Under Louisiana law, "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." LA. REV. STAT. § 14:27. Furthermore, the state does not need to establish actual or attempted actual possession of a controlled dangerous substance in order to support an attempted possession conviction; indeed, constructive possession is sufficient to support the verdict. *State v. Harris*, 597 So.2d 1105, 1108 (La.App. 2 Cir. 1992) (citing *State v. Jackson*, 557 So.2d 1034 (La.App. 4th Cir.1990). Louisiana state law also holds that, "[a] person not in physical possession may be in constructive possession of a controlled dangerous substance if the substance is subject to that person's dominion and control and he has knowledge of the substance." *Id.*

   In the case, Petitioner alleges that the State failed to dis-prove the defense. Indeed, Petitioner argues that the testimony of his witness, Aaron Joseph, thoroughly refuted the state's evidence. However, the fact that Petitioner's conviction may have been based on the credibility of witness testimony is insufficient to supplant the jury's determination of guilt. *Green v. Johnson*, 160 F.3d 1029, 1047-48 (5th Cir.1998). Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses. *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (under *Jackson* resolving credibility issues is generally beyond the scope of appellate review); *United States v. Goff*, 155 Fed. Appx. 773 (5th Cir.2005) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)). Instead, the narrow standard of review under *Jackson* "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

24

ultimate facts." *Jackson*, 443 U.S. at 319. Indeed, "[t]he trier of fact has broad discretion to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Green*, 160 F.3d at 1047 (quoting *Jackson*, 443 U.S. at 319) (internal quotations omitted).

The Louisiana Court of Appeals for the 5th Circuit addressed this issue during Petitioner's direct appeal. Even without the challenged hearsay evidence of Mario Gonzalez, there was sufficient evidence to support the conviction:

> The address of the house in which the drugs were found was listed as the Defendant's address on his driver's license. The officers stationed outside the house saw the Defendant approach the house and then attempt to flee when he saw them, creating the inferences that the Defendant was living there and that he was engaged in criminal activity. In addition, the Defendant gave the investigating officers a key with which to enter the house and several documents were found in the house addressed to Ju Cho (a name used by Defendant) at that address. These included a power company bill with a due date of November 23, 1999, a bank statement dated October 31, 1999, and a notice of reinstatement from an insurance company, postmarked October 20, 1999.
>
> The contents of the house at the time the search warrant was executed shows that it was the scene of drug activity. The remains of marijuana cigarettes were found in ashtrays and large quantities of marijuana were found concealed in various places and in plain view. The officers found a digital scale in a room with marijuana residue on the concrete floor, indicative of drug distribution. *State v. Cho*, 831 So.2d 433, 443 (La. App. 5 Cir. 2002).

Clearly, the record shows that the State presented evidence that drugs were found inside Petitioner's home. Thus, at the time Petitioner was arrested, there was evidence that the drugs were under his dominion and control. This Court notes that under state law the "mere presence of a person in the place where contraband is found or the mere association with a person possessing contraband is insufficient to establish constructive possession." *State v. Harris*, 597 So.2d 1105, 1108 (La.App. 2 Cir. 1992). However,

Louisiana law provides several factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession. The factors include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. *Id.* In this case, the record reflects that the Petitioner had access to the area where the drugs were found, and there was evidence of recent drug use. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Donahue*, 231 F.3d at 1004. Accordingly, this Court cannot find that the decision reached by the state court to uphold Petitioner's conviction was neither contrary to, nor an unreasonable application of federal law under *Jackson*. Consequently, this claim is dismissed.

### 7. Inconsistent and Irreconcilable Theories

Finally, Petitioner claims that his due process rights were violated because the state used inconsistent and irreconcilable theories to secure a conviction. Essentially, Petitioner argues that the state misled the jury by arguing that the Petitioner's witness, Aaron Joseph ("Joseph"), was not credible. Joseph testified that he was responsible for the marijuana in Petitioner's house. The prosecutor refuted Joseph's testimony during closing argument.[12] Additionally, the Petitioner notes that the state later charged Joseph

---

[12] During closing argument the Prosecutor stated:

> Let me explain something to you. It's the oldest trick in the book, the oldest defense trick. You parade a witness in here. He comes through that door and he goes up there and takes the stand. He testifies, "No, no ladies and gentleman, it

with possession with the intent to distribute cocaine.[13] Rec. Doc. 3, Petitioner's Amended

Complaint, p. 3. Regardless of whether the state charged both Petitioner and Joseph with

similar crimes relating to the possession and distribution of the same drugs, this Court

must determine whether the state improperly prejudiced Petitioner's right to a fair trial.

---

was my dope. I was buying it, selling it, I possessed it with intent to distribute it. It's all mine. I did it." No physical evidence to point the finger to him, because if there was, I would have charged the man with it. There's absolutely no evidence to link him to that home.

He comes in and tells you, "I did it. I did it. It's mine." You take the bait. You find him not guilty. Well, this trial's over. Just because Aaron Joseph takes the stand and says, "I'm guilty." "I'm guilty" doesn't make him guilty. I've got to charge the man with a crime. The DA's office ...

[closing argument was interrupted for a bench conference].

Before I was interrupted, the DA's office has to initially charge Mr. Joseph with a crime. And then Mr. Joseph has a right to a trial. And I have to prove beyond a reasonable doubt that he possessed marijuana with the intent to distribute. I have no physical evidence of that, only his testimony in this [case].

Well, guess who's going to show up at Mr. Joseph's trial? John Cho.

[Objection]

John Cho can testify that, "Ladies and gentleman," to a different jury, "It's all my dope. All the physical evidence points to whom? To him."

And guess what that jury's going to do. "Well, it couldn't have been Aaron Joseph's dope, it had to be John Cho's dope, so we're going to find Aaron Joseph not guilty. Well then what happens? Mr. Cho is set free; Mr. Joseph is set free. They don't have to testify, it's the Fifth Amendment privilege. And double jeopardy sets in. Nobody can try him again. It's the oldest trick in the book, and you've just been had.

[13] This Court believes the amended petition erroneously states that Aaron Joseph was later charged with possession with the intent to distribute cocaine because Petitioner's application for post-conviction relief states that Aaron Joseph was arrested and pled guilty to possession of marijuana. State Rec., Vol. 3, Application for Supervisory Writs From the April 6, 2004 Order Denying Post-Conviction Relief, p. 17, n. 12.

Petitioner's claim is basically one for prosecutorial misconduct on the grounds that the prosecutor made an improper closing argument. Prosecutorial misconduct is a cognizable claim in federal habeas corpus petitions. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. *Smith v. Phillips*, 455 U.S. 209, 219, (1982) (noting, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Generally, a claim of prosecutorial misconduct presents a mixed question of law and fact. *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.), *cert. denied*, 469 U.S. 824,(1984); *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir.1989), *cert. denied*, 498 U.S. 878, (1990).

The Fifth Circuit has held that prosecutorial misconduct can render a trial fundamentally unfair "only if the prosecutor's remarks evince either persistent and pronounced misconduct or … the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985) (quoting *Fulford v. Maggio*, 692 F.2d 354, 359 (5th Cir. 1982), *rev'd on other grounds*, 462 U.S. 111 (1983) (internal quotations omitted)). Additionally, in a federal habeas corpus proceeding, this Court must review allegedly improper prosecutorial arguments under a strict standard. *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000). The first inquiry is whether the prosecutor's comments were indeed improper; the second is to evaluate whether the comments were harmful. *United States v. Parker*, 877 F.2d 327, 332 (5th Cir.), *cert. denied*, 493 U.S. 871 (1989). Additionally, the Supreme Court has stated:

> [i]nappropriate prosecutorial comments, standing alone, would not justify a
> reviewing court to reverse a criminal conviction obtained in an otherwise fair
> proceeding . . . the remarks must be examined within the context of the trial to
> determine whether the prosecutor's behavior amounted to prejudicial error. In
> other words, the Court must consider the probable effect the prosecutor's
> response would have on the jury's ability to judge the evidence fairly. *U.S. v.
> Young*, 470 U.S. 1, 11-12 (1985).

Furthermore, the prosecutorial remarks "must be more than undesirable or condemnable;

they must be so pronounced and persistent as to cast serious doubts on the verdict,"

*United States v. Rodriguez*, 43 F.3d 117, 124 (5th Cir.1995), and must have been a

"crucial, critical, highly significant factor in the jury's determination of guilt," *Ortega v.*

*McCotter*, 808 F.2d 406, 410 (5th Cir. 1987).

The Fifth Circuit has held, "[t]he role of the attorney in closing argument is to

assist the jury in analyzing, evaluating and applying the evidence." *U.S. v. Garza*, 608

F.2d 659, 662 (5th Cir. 1979). "It is not for the purpose of permitting counsel to 'testify'

as an 'expert witness.' " *Id.* (quoting *United States v. Morris*, 568 F.2d 396, 401 (5th Cir.

1978)). Furthermore, the Fifth Circuit ruled that a prosecutor "may not express his

personal opinion on the merits of the case or the credibility of witnesses," except to the

extent he bases any opinion on the evidence in the case. *Id.* at 663.

In *Garza*, the court found that a prosecutor's comments during closing argument

were improper when the prosecutor bolstered his witness' credibility. *Id.* Additionally,

the Fifth Circuit held that "[t]he prosecutor entered a second line of improper comment when he argued that the prosecution would not have been commenced, and that he personally would not have participated unless it had already been determined that defendant was guilty." *Id* at 664. The court found the prosecutor's entire line of argument improper because it "presumed that the whole government apparatus, and the prosecutor individually, had reached a determination of the defendant's guilt before the trial and implied that the jury should give weight to this fact in making its determination." *Id.* at 665. Finally, the court noted that a prosecutor "may not suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty." *Id.* at 663.

Here, the Prosecutor's statements that Joseph was not credible, and that the state would have charged Joseph with a crime, if the state believed that Joseph was involved in drug trafficking was an improper argument. The Court finds that it was improper for the prosecutor to comment on the lack of evidence against Joseph because that information was not presented to the jury during the trial against Petitioner. Indeed, the prosecutor's explanation of the "oldest defense trick" during closing argument was patently improper because it suggested additional grounds for finding the Petitioner guilty. Specifically, the prosecutor suggested that the jury should find the Petitioner guilty because the state did

not believe that the marijuana belonged to Joseph.

However, "in the *habeas* context, the appropriate standard of review for such conduct is the narrow one of due process, and not the broad exercise of supervisory power." *Gooden v. Cockrell,* 2003 WL 22846403 at *8 (April 11, 2003) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Here, this Court cannot conclude that the trial was fundamentally unfair. *See Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985) (holding that fundamental unfairness results only if the prosecutor's remarks were either persistent and pronounced misconduct, or the evidence was so insubstantial that but for the remarks no conviction would have occurred). The remarks were confined to one part of the closing argument, and thus, they were not persistent or pronounced misconduct. Moreover, the evidence was substantially against Petitioner; therefore, a conviction was likely even if the prosecutor had not made improper comments. First, the jury was instructed that the closing arguments were not evidence, merely statements by the attorneys about what they thought the evidence had shown. Second, there is overwhelming evidence against the Petitioner: it is undisputed that the police found at least nine (9) pounds of marijuana in his home. Finally, there is no evidence to support Joseph's testimony that he lived at the residence because "there was no bed in the room and no clothes in the closet." *State v. Cho*, 831 So.2d 433, 440 (La.App 5 Cir. 2002).

Consequently, the prosecutor's remarks do not cast serious doubt on the verdict.

Accordingly, this claim for relief must be denied under *Rodriguez. United States v.*

*Rodriguez*, 43 F.3d 117, 124 (5th Cir.1995).


## V. CONCLUSION

Having considered the complaint, the record, and the applicable law, it is

determined that Petitioner's claims are without merit. Accordingly, Petitioner's claims

are without merit and it is **ORDERED** that the petition of John Cho be **DENIED WITH**

**PREJUDICE**. Judgment will be entered accordingly.


New Orleans, Louisiana this 19th day of November, 2007.


HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE